**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| GAYNELL TUMBLIN, | * |
| | * CIVIL DOCKET NUMBER: |
| Plaintiff, | * |
| | * |
| VERSUS | * |
| | * |
| MARLIN GUSMAN, SHERIFF OF | * SECT: |
| ORLEANS PARISH; CAPTAIN CHAD | * |
| RUIZ, WARDEN OF ORLEANS | * JUDGE: |
| JUSTICE CENTER; CORRECT CARE | * |
| SOLUTIONS; J. DOES #1-99. | * |
| | * MAG: |
| Defendants. | * |
| | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT

## I.     INTRODUCTION

1.

On February 28, 2016, Cleveland Tumblin, a 61-year-old New Orleans native, was arrested in Orleans Parish and taken to the Orleans Justice Center ("OJC"). At booking and during Mr. Tumblin's Medical Intake Screening, nurse "S. Dixon" was made aware of the following:

a.  Mr. Tumblin's diagnosis of bipolar disorder;

b.  his prescription for Risperdal;

c.  his prior commitment to inpatient treatment for his serious mental illness;

d.  the fact he had recently experienced a significant loss;

e.  that he had been depressed for at least two weeks within the last year; and

f.  Mr. Tumblin made a request to see a mental health professional while in OJC.

Two days later, on March 1, 2016, OJC's health care provider, Correct Care Solutions, documented that Mr. Tumblin suffered from schizophrenia.

Yet, despite all of the above red flags for serious mental health issues, Mr. Tumblin was housed in general population, and, while at the OJC, Mr. Tumblin never received any mental health care.

2.

On March 5, 2016, Mr. Tumblin was led to a shower stall by a guard. Sheriff Marlin Gusman ("Sheriff" and/or "Gusman"), Captain Chad Ruiz ("Warden Ruiz" and/or "Ruiz"), and other members of the Sheriff's office knew that the very shower stall to which Mr. Tumblin was taken was a suicide risk. The shower stall had a door that locked from the inside and an exposed pipe running across the shower stall several feet above neck level – defects and dangers which had previously been identified by the Federal Monitor.

3.

Suffering from multiple psychological disorders and being a known suicide risk, yet having received no mental health care, and thereafter being placed in a shower stall seemingly designed to facilitate suicides, Mr. Tumblin engaged in the entirely predictable and preventable act of hanging himself.

4.

Mr. Tumblin succumbed to injuries received during his hanging and died on March 7, 2016.

5.

Instead of providing adequate, appropriate, and necessary care and treatment to Mr. Tumblin, the Defendants failed in their professional duties and their legal obligations.  Mr. Tumblin was treated by the Defendants in a callous, harsh and indifferent manner, resulting in his death by suicide in a shower with a suicide hazard known to the Defendants.  Even more unfathomable is the fact that the shower was designed to lock from the inside, making it impossible for OJC staff to respond to Mr. Tumblin's body hanging from the known suicide risk in a timely

fashion.  When OJC staff did respond, they failed to take action to support Mr. Tumblin and instead went for back-up, losing precious minutes that could have saved Mr. Tumblin's life.  At all relevant times, the OJC was operated and supervised by the Orleans Parish Sheriff's Office (OPSO), under the leadership of Sheriff Marlin Gusman.

6.

Mr. Tumblin was not properly diagnosed, treated, or cared for while in the custody of the Defendants.  In spite of his documented need for immediate mental health follow-up, he was only recommended for a psychiatric evaluation in two (2) weeks-time.  He was denied appropriate and necessary medical, psychiatric, nursing, and therapeutic care, treatment and supervision.  Instead, he was confined in a hostile, barren, and isolated environment staffed with OPSO deputies poorly trained to manage the prisoner population detained in the OJC.  In addition, conditions of confinement exacerbated and aggravated Mr. Tumblin's condition, which was fragile and precarious to begin with.  Defendants provided Mr. Tumblin access to materials to harm himself while in an acute state of emotional and psychological crisis.  The mistreatment of Mr. Tumblin by the Defendants in OJC was in contravention of the community standard of care and violated applicable federal and state constitutional and statutory standards.

7.

The Defendants' actions and omissions, manifested in inadequate medical screening and intake, inadequate staffing, inadequate training and supervision of staff, inadequate facilities, inadequate policies and procedures relating to diagnosis and treatment of mentally ill and suicidal persons in custody, as well as inadequate care, treatment, and monitoring of Mr. Tumblin, were directly and causally related to Mr. Tumblin's death.

8.

For too many years there have been numerous other similar, avoidable, unnecessary and unconscionable injuries, sufferings and deaths of prisoners in the custody of the OPSO related to the denial of adequate medical care, inadequate supervision and training of staff, and lack of reasonable accommodations for individuals with disabilities, mental illness in particular. The instant case represents yet another instance of a shocking degree of callous and inexcusable disregard for the serious medical needs of a prisoner detained by the OPSO, in this instance Mr. Tumblin, by those very persons who were responsible for his care.

## II.    JURISDICTION

9.

This action is brought pursuant to 42 U.S.C. § 1983, pursuant to the Fourteenth Amendment to the United States Constitution. Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343, and the aforementioned statutory and constitutional provisions. In addition, Plaintiffs invokes supplemental jurisdiction over claims under state constitutional and statutory law pursuant to 28 U.S.C. §1367. A jury trial is requested.

## III.    PARTIES

10.

**GAYNELL TUMBLIN** (hereinafter, "Plaintiff") is the sister of Cleveland Tumblin, who died while under the custody and care of the defendants as further described herein. Plaintiff is a person of the full age of majority and a resident of Louisiana domiciled in New Orleans, Louisiana. At the time of his death, Cleveland Tumblin was unmarried, had no children and was pre-deceased by both of his parents. He was a pretrial detainee and a resident of New Orleans, Louisiana. Plaintiff is the duly appointed administrator of Cleveland Tumblin's estate.

4

Named Defendants herein are:

11.

**DEFENDANT SHERIFF MARLIN GUSMAN** (hereinafter, "Defendant Gusman") a person of full age of majority and a resident of Louisiana, is sued in his individual and official capacity as the Sheriff of Orleans Parish.  At all times described herein, Defendant Gusman was the final policymaker for the OPSO, and was responsible for the hiring, training, supervision, discipline and control of appropriate staff to maintain the care, custody, and control of prisoners in the custody of the OJC.  He was responsible for all staffing levels at the OJC.  He was also responsible for the supervision, administration, policies, practices, customs, and operations of OJC.  Defendant Gusman was and is a final policy maker who at times delegated policy making authority to other Defendants named in this lawsuit.  At all pertinent times, Defendant Gusman was acting under color of law.  He is liable both directly for the unconstitutional actions and vicariously for the state law actions complained of herein.

12.

**CAPTAIN CHAD RUIZ** (hereinafter, "Defendant Ruiz") a person of the full age of majority and a resident of Louisiana, is sued in his individual and official capacity as warden of the OJC.  At all times described herein, Defendant Ruiz was the Warden of the OJC, and as such was responsible for supervision, administration, policies, practices, customs, operations, training of staff, and operation of the OJC.  Defendant Ruiz was and is a final policy maker who at times delegated policy making authority to other Defendants named in this lawsuit.  At all pertinent times, Defendant Ruiz was acting under color of law.  He is liable both directly for the unconstitutional actions and vicariously for the state law actions complained of herein.

13.

**CORRECT CARE SOLUTIONS** (hereinafter, "CCS"), was at all relevant times the entity with which the OPSO contracted to provide medical and mental health services to prisoners at OJC.  CCS was responsible for the provision of all staffing, training, policies and procedures for medical and mental health personnel at CCS.

14.

**J. DOES #1-49** were at all relevant times Louisiana registered health care professionals and adult residents of Louisiana who were acting under color of state law and were employees or agents of CCS.  J. Does #1-49 are liable both directly for the unconstitutional actions and vicariously for the state law actions complained of herein.  Plaintiff is unaware of the true names and capacities of these Defendants and therefore sues those persons by fictitious names in their individual capacity.  Plaintiff will amend this Complaint to allege their true names and capacities when ascertained and intends to seek immediate discovery from the Defendants to determine the identity of J. Does #1-49.

15.

**J. DOES #50-99** were at all relevant times adult residents of Louisiana who were acting under color of state law and were employees or agents of the Defendants Sheriff Gusman and Warden Ruiz.  J. Does #50-99 are liable both directly for the unconstitutional actions and vicariously for the state law actions complained of herein.  Plaintiff is unaware of the true names and capacities of these Defendants and therefore sues those persons by fictitious names in their individual capacity.  Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained and intends to seek immediate discovery from the Defendants to determine the identity of J. Does #50-99.

## IV.    FACTUAL ALLEGATIONS

16.

On or about February 29, 2016, Mr. Tumblin was booked into the OJC.  According to OJC documents, he was beaten badly by civilians prior to his arrest and suffered from facial lacerations that required sutures, a fractured orbital wall to his right eye, and traumatic iritis caused by blunt force trauma to both eyes.

17.

In addition to his physical health issues, according to OJC documents, Mr. Tumblin suffered from serious mental health conditions, namely bipolar disorder and paranoid schizophrenia, and was taking Risperdal—a powerful antipsychotic medicine.

18.

OJC records indicate that Mr. Tumblin informed OJC officials that he had recently suffered a significant loss (relationship, death of family/close friend, job, etc.) and had been depressed for most of the day for at least 2 weeks in the last year.  Mr. Tumblin told OJC staff that he wished to be referred to a mental health professional.  OJC staff placed Mr. Tumblin in general population and during his time in OJC Mr. Tumblin never saw a mental health professional.

19.

Since at least 2008, Defendant Gusman and OJC leadership has known that OPSO suicide prevention practices are grossly inadequate and that what was then the Orleans Parish Prison (OPP) failed to provide inmates with mental health care that complies with constitutional standards.

20.

On September 11, 2009, after document review, extensive interviews of OPP staff and inmates, and tours of OPP by lawyers and subject matter experts, the United States Department of Justice issued a detailed findings letter to Defendant Gusman.  It informed Defendant Gusman that

conditions at OPP were unconstitutional and expressly listed a failure to follow up on mental health issues revealed during the inmate booking process.  The United States sought extensive remedies to what it claimed was a pattern and practice of conduct by Defendant Gusman and his deputies that violated the constitutional rights of inmates in OPP.

21.

Between 2009 and 2012, Defendant Gusman allegedly attempted to remedy the constitutional violations, including the grossly inadequate suicide prevention practices and constitutionally deficient mental health care.

22.

On April 4, 2012, a class action lawsuit was filed by a number of inmates alleging that Defendant Gusman was deliberately indifferent to the basic rights of the individuals housed at OPP.  Among the claims were dangerously insufficient classification of prisoners, poor security policies and practices, constitutionally deficient staffing, and unconstitutional medical and mental health policies and practices.  The lawsuit notified Defendant Gusman of a "gross failure to identify and treat" mentally ill inmates.

23.

On September 25, 2012, the United States intervened in the class action lawsuit alleging numerous constitutional violations and deliberate indifference to the basic rights of prisoners in Defendant Gusman's care.  The Complaint included allegations that Defendant Gusman was deliberately indifferent to prisoner's serious mental health care needs and "to the obvious and substantial ongoing risk of prisoner suicide, self-harm, and untreated mental illness."

24.

In June of 2013, the lawsuits filed against Defendant Gusman by prisoners and the United States was resolved through a Consent Judgment.  The settlement required Defendant Gusman to

8

implement extensive reforms, including an objective and validated classification system that assigns prisoners to housing units to protect from unreasonable risks of harm—including suicide risk and mental illness.

### 25.

The Consent Judgment anticipated the construction of a new facility to replace OPP. Defendant Gusman committed to "obtain the services of a qualified professional to evaluate, design, plan, oversee, and implement the construction of" what is now the OJC.

### 26.

In September of 2015, Defendant Gusman closed OPP and moved prisoners into the OJC.

### 27.

The Consent Judgment required that a Monitor be retained to oversee implementation of the Consent Judgment.  The Monitor has a staff of experts, including an expert in mental health and suicide prevention in correctional settings, and full access to documents, staff, and prisoners detained in any jail facility under Defendant Gusman's authority.

### 28.

The Monitor produces regular reports to the parties and Court.  Since February 13, 2014, there have been 6 reports documenting the status of compliance by Defendant Gusman with the Consent Judgment's 171 provisions.  In none of the reports has Defendant Gusman been found to have substantially complied with more than 12 of the Consent Judgment's 171 provisions.

### 29.

The federal court overseeing the Consent Judgment has, since the lawsuit was filed in 2012 and resolved in 2013, had a number of public status conferences and public evidentiary hearings. On April 7, 2016, after hearing testimony from the Monitor and her team, U.S. District Judge Lance Africk stated that the "record at this point continues to paint a dismal picture of compliance"

and the "rate of suicide attempts and suicide ideation, including self-injurious behavior, is utterly unacceptable."  On June 21, 2016, the Judge Africk issued a Stipulated Order for Appointment of Independent Jail Compliance Director, effectively removing Defendant Gusman from operational control of the OJC.

30.

The appointment came too late for Mr. Tumblin.  Experts who reviewed OJC documents related to Mr. Tumblin's admission, screening, and treatment at OJC testified at the April 7, 2016 status conference and during the evidentiary hearings on May 25-26, 2016 to a number of conditions of confinement and specific acts or omissions that led to Mr. Tumblin's wholly preventable death.

31.

At the April 7, 2016 status conference, the Monitor's mental health expert, Dr. Raymond Patterson, testified that Mr. Tumblin screened positively for suicide risk and should have been provided a full mental health evaluation within 24 hours.  As noted earlier and documented in OJC records, the full mental health evaluation of Mr. Tumblin never occurred.

32.

One possible cause for the failure of Defendants to evaluate Mr. Tumblin was what Dr. Patterson called "serious flaws in the management inside the jail," including flaws in mental health referral and medication follow-up.  Defendant Gusman had direct knowledge of his department's unconstitutionally deficient mental health and suicide prevention policies and procedures since at least 2009.  Defendants Warden Ruiz and CCS, as the individual and entity responsible for implementing the Consent Judgment, had knowledge of the repeated failure to comply with the Consent Judgment provisions designed to protect prisoners with mental illness who were at risk of suicide.

33.

At the April 7, 2016 status conference, Dr. Patterson, testified that—even though Mr. Tumblin had screened positively for suicide risk—he was permitted access to a shower that both locked from the inside and contained a suicide hazard.  Both conditions had been mentioned repeatedly in the Monitor reports, making the physical defects and danger to prisoners, including Mr. Tumblin, well known to the Defendants prior to Mr. Tumblin's death.

34.

At the April 7, 2016 status conference, Dr. Patterson testified that, had OJC staff been properly trained to respond to attempted suicides, Mr. Tumblin could have lived.  Dr. Patterson testified that OJC documents indicate that Defendant J. Doe failed to respond to Mr. Tumblin's suicide attempt by supporting Mr. Tumblin's body.  Instead Defendant J. Doe went to the control booth to alert a need for back-up and response.  Since 2009, Defendant Gusman had direct knowledge that OPSO's training of staff in responding to and preventing suicide attempts is constitutionally deficient.

35.

The Consent Judgment requires Defendants to produce documents to the United States and the class action counsel within 24 hours upon the death of any prisoner, including incident reports, death summaries, and final Special Operations and Internal Affairs Division reports.  In addition, it requires the completion of a final mortality review report within 30 days of a suicide.

36.

On July 11, 2016, lawyers for Mr. Tumblin sent a request for public records under La. R.S. 44:1, *et seq.* to Defendant Gusman seeking records related to Mr. Tumblin's detention and suicide. No documents responsive to repeated requests to Defendant Gusman, through his counsel James Williams, have been provided to undersigned counsel.

37.

The right to examine public documents is constitutionally protected under the guaranteed "right to direct participation" under Article 12 section 3 of the Louisiana State Constitution. Under this provision, "[n]o person shall be denied the right to observe the deliberation of public bodies and examine public documents, except in cases established by law."

38.

The provisions of the Public Records Act, La. R.S. 44:1 et seq, implement this constitutional right and create an enforcement mechanism to ensure compliance.  Under the law, when the custodian of the records—in this case, Defendant Gusman—raises a question whether it is a public record, "such custodian shall within three days, exclusive of Saturdays, Sunday, and legal public holidays, of the receipt of the request, in writing for such record, notify in writing the person making such request of his determination and the reasons therefor. Such written notification shall contain a reference to the basis under law which the custodian has determined exempts a record, or any part thereof, from inspection, copying, or reproduction."

39.

Plaintiff has made numerous requests for the public records in Defendant Gusman's custody related to Mr. Tumblin's detention at the OJC and suicide.  To date no response other than there is an "investigation" has been made and no documents have been provided, even though the public record is replete with documents explaining and examining Mr. Tumblin's detention and suicide at the OJC.

40.

Sometime after Mr. Tumblin died, a prisoner detained with Mr. Tumblin on the day he committed suicide wrote to the Monitor, Susan McCampbell, claiming that no guard was in the living unit or doing rounds when Mr. Tumblin hanged himself and prisoners on the unit had to

repeatedly attempt to get Defendant J. Doe's attention before Doe came onto the unit and discovered Mr. Tumblin.   On information and belief, even though the OJC is chronically understaffed and guards fail to monitor living units to insure prisoners are safe, guards falsely document that they do in fact do rounds.  The prisoner noted that OPSO staff videotaped interviews with most or all of the prisoners on the unit as part of the investigation.

41.

On information and belief, even though the OJC is chronically understaffed and guards fail to monitor living units to insure prisoners are safe, guards falsely document that they do in fact do rounds.

42.

The failure to adequately screen, classify, and evaluate detainees for suicide risk, and the failure of Defendants to effectively intervene to prevent completed suicides by detainees, including Mr. Tumblin's, are the result of policies and practices developed by or are so extended and pervasive that Defendants Gusman, Ruiz, and CCS knew or should have known of them.

43.

Defendants Gusman, Ruiz, CCS, J. Does #1-49, and J. Does #50-99 failed to provide Mr. Tumblin sufficient access to qualified medical and mental health care.

44.

Defendants Gusman, Ruiz, and CCS failed to adequately staff and train employees responsible for providing constitutionally adequate medical and mental health care at the OJC.  As the result of policies and practices permitted by Gusman, Ruiz, and CCS, OJC staff are not trained and/or supervised to address prisoners' serious medical and mental health care needs, including those exhibited by Mr. Tumblin, resulting in deliberate indifference to prisoners' serious medical and mental health care needs and the death of Mr. Tumblin.

45.

Defendants Gusman, Ruiz, and CCS' deliberate indifference to Mr. Tumblin's serious medical and mental health care needs began with his initial contact with Defendants' staff and assessment, and continued through his detention in the OJC.  Defendants completely failed to provide necessary mental health care.

46.

Consistent with OJC's practice and custom, Defendants Gusman and Ruiz fail to provide adequate staffing levels at OJC, and J. Does #50-99 failed to monitor prisoner living areas, including the living unit and showers occupied by Mr. Tumblin.  One prisoner detained with Mr. Tumblin reported that a guard only stayed in the unit to directly supervise the prisoners *after* Mr. Tumblin was removed on a stretcher.  The failure to physically stay in the unit and monitor Mr. Tumblin's shower permitted Mr. Tumblin to hang himself.

47.

Consistent with OJC's practice and custom, defendants J. Does #50-99 falsely documented that OJC staff make regular monitoring rounds to supervise prisoners.

48.

The failures of all Defendants are well known and consistent with a pattern and practice resulting in deliberate indifference to the basic human needs, including medical and mental health care, of prisoners at the OJC, including Mr. Tumblin.

49.

At all times relevant to this complaint, Defendants acted under color of state law.

50.

At all times mentioned herein, J. Does #1-99 were employed by Defendants Gusman and CCS and acting in the course and scope of their employment.

51.

All of the Defendants are liable to the Plaintiff for compensatory and punitive damages.

52.

All of the Defendants are liable jointly, severally, and in solido for the Plaintiff's injuries.

53.

Defendants' actions were reckless, willful, wanton, and malicious, and constituted deliberate indifference to the rights of the Mr. Tumblin and the Plaintiff. Defendants' actions were the proximate cause of the injuries and death of Mr. Tumblin and the damages of the Plaintiff.

## V.    CAUSES OF ACTION

### COUNT 1 – § 1983 Violation Based on Establishment of a System in which Prisoners with Serious Mental Health Issues are Denied Access to Appropriate Medical Care — Defendants Gusman and Ruiz (Official Capacities)

54.

Plaintiff repeats and re-alleges each and every allegation of the complaint.

55.

The defendants named in this Count, acting individually and together, under color of law, violated Mr. Tumblin's right to be free from punishment without due process as protected by the Fourteenth Amendment of the United States Constitution and 42 USC § 1983. They did so by coordinating with CCS to provide inadequate and insufficient services for medical and mental health care that they knew would result in the deprivation of adequate medical and mental health care for prisoners with serious medical conditions, namely, serious mental health conditions. Plaintiff was individually harmed by the insufficiency of the contract and the failure to make other accommodations to provide mental health services because they resulted in the death of Mr. Tumblin, who was deprived of appropriate mental health and medical treatment after he was booked into the OJC, which deprivation resulted in his death, as described above.

15

56.

At all pertinent times, the defendants named in this Count, individually and collectively, acted unreasonably, recklessly, and with deliberate indifference and disregard for the safety, constitutional, and civil rights of Mr. Tumblin by failing to provide appropriate medical and mental health services.

**COUNT 2 – § 1983 Violation Based on Failure to Supervise Other Defendants to Ensure Prisoners Received Appropriate Care for Serious Medical Needs— Defendants Gusman and Ruiz (Individual and Official Capacities)**

57.

Plaintiff repeats and re-alleges each and every allegation of the complaint.

58.

The defendants named in this Count, acting individually and together, under color of law, violated Mr. Tumblin's right to be free from punishment without due process as protected by the Fourteenth Amendment of the United States Constitution and 42 USC § 1983.   Defendants Gusman and Ruiz, in their individual and official capacities, failed to supervise their subordinates, namely J. Does #50-99, to ensure that these subordinates did not ignore prisoners' requests for medical and/or mental health treatment, fail to refer prisoners needing treatment to appropriate mental health professionals, and/or fail to properly monitor prisoners who report suicidal ideation or show signs of mental health crisis.  The Plaintiff was directly harmed by this failure to supervise because it caused the death of Mr. Tumblin, who was either left untreated or received patently insufficient treatment for his serious medical and mental health needs from the specified defendants.  At all pertinent times herein, defendants Gusman and Ruiz were aware of the need to supervise their subordinates in order to ensure that they did not violate prisoners' rights.  These defendants ignored that need and acted unreasonably and with deliberate indifference and disregard for the safety of Mr. Tumblin, as described above.

16

**COUNT 3 — § 1983 Violation Based on Deliberate Indifference to Mr. Tumblin's Constitutional Right to Appropriate Medical and Mental Health Care— Defendants J. Does #50-99 (Individual and Official Capacities)**

59.

Plaintiff repeats and re-alleges each and every allegation of the complaint.

60.

The above-named defendants, acting individually and together, and under color of law, engaged in a course of conduct and conspired to engage in a course of conduct that acted to deprive Mr. Tumblin of his constitutional rights and did deprive him of said rights, specifically, the right to reasonable and adequate medical and mental health care, and the right to be free from cruel and unusual punishment, as protected by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.  At all times pertinent herein, these defendants, acting individually and collectively, acted unreasonably, recklessly, maliciously, and/or with deliberate indifference and disregard for the constitutional and civil rights and life and serious medical needs of the deceased, Mr. Tumblin.  Furthermore, these defendants, individually and collectively, had the duty and ability to intervene to prevent the violations of the rights of Mr. Tumbin, as described herein, but failed to do so.  Finally, these defendants acted as a final policy maker when they ignored official policy and failed to monitor Mr. Tumblin, and deprived Mr. Tumblin of adequate medical and mental health care, having been delegated the authority to do so by Sheriff Gusman and Warden Ruiz.

**COUNT 4 – *Monell* Violation of § 1983 Based on Establishment of Policies, Patterns or Practices Pursuant to Which Prisoners with Serious Mental Health Conditions are Denied Access to Appropriate Medical Care— Defendants Gusman and Correct Care Solutions (Official Capacities)**

61.

Plaintiff repeats and re-alleges each and every allegation of the complaint.

62.

The defendants named in this Count, Gusman and CCS, individually and together, under color of law, acted to violate Mr. Tumblin's right to be free from punishment without due process of law as protected by the Fourteenth Amendment to the United States Constitution and 42 USC § 1983.  They did so by establishing and maintaining policies, patterns, or practices that they knew would deprive prisoners with serious medical conditions, namely, serious mental health disorders, of treatment for those disorders.

63.

Mr. Tumblin and the plaintiff were individually harmed by these policies, patterns, or practices because they resulted in the death of Mr. Tumblin, who was deprived of appropriate mental health and medical treatment after he was booked into the OJC, and did not receive constitutionally sufficient screening, evaluation, and treatment for his mental health condition. These deprivations resulted in his death, as described above.

64.

At all pertinent times, the defendants named in this Count, individually and collectively, acted unreasonably, recklessly, and with deliberate indifference and disregard for the safety, constitutional, and civil rights of Mr. Tumblin by establishing the above-described policies, patterns, or practices.

65.

The above-named defendants are therefore liable to the plaintiff for the violation of constitutional rights described above pursuant to *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978).

**COUNT 5 –§ 1983 Violation Based on Specific Act or Omission Resulting in
Unconstitutional Injury and Death— Defendants J. Does #1-99 (Individual Capacities)**

66.

Plaintiff repeats and re-alleges each and every allegation of the complaint.

67.

The Defendants named in this Count, J. Does #1-99, individually and together, under color of law, acted to violate Mr. Tumblin's right to be free from punishment without due process of law as protected by the Fourteenth Amendment to the United States Constitution and 42 USC § 1983. They did so by failing to adequately follow-up on their initial assessment that he was a suicide risk, denying him access mental health care, failing to monitor him, placing him in a shower with known suicide risks, and falsifying official logbooks to indicate that they did monitor him. These Defendants were acting upon the custom within the OJC of training and supervision, or the lack thereof, that authorizes CCS and sheriff's deputies to ignore the basic human needs of prisoners, including Mr. Tumbin, in the OJC.

68.

Mr. Tumblin and the Plaintiff were individually harmed by these policies, patterns, or practices because they resulted in the death of Mr. Tumblin, who was deprived of his constitutional right to have his basic human needs met and provided constitutionally adequate medical and mental health care. These deprivations resulted in his death, as described above.

69.

At all pertinent times, the defendants named in this Count, individually and collectively, acted unreasonably, recklessly, and with deliberate indifference and disregard for the safety, constitutional, and civil rights of Mr. Tumblin by establishing the above-described policies, patterns, or practices.

**COUNT 6 – § 1983 Violation Based on Failure to Provide Conditions That Reduce Exposure to Known Suicide Risks— Defendants Gusman and Ruiz (Individual and Official Capacities)**

70.

Plaintiff repeats and re-alleges each and every allegation of the complaint.


71.

The defendants named in this Count, acting individually and together, under color of law, violated Mr. Tumblin's right to be free from punishment without due process as protected by the Fourteenth Amendment of the United States Constitution and 42 USC § 1983.   Defendants Gusman and Ruiz, in their individual and official capacities, failed to provide reasonably safe conditions that reduced prisoners' exposure to known suicide risks.   Defendants named in this Count approved OJC's design and opening with shower doors that lock from inside the shower and bars that support the weight of prisoners.   The Plaintiff was directly harmed by this failure to reduce suicide risks because it caused the death of Mr. Tumblin, who was placed in a shower with a known suicide risk and permitted to lock the shower door, inhibiting OJC staff seeking to prevent Mr. Tumblin's suicide and death.   At all pertinent times herein, Defendants Gusman and Ruiz were aware of the design of the new jail and the suicide risks it posed, yet approved of the design and opened the OJC to prisoners.   These Defendants acted unreasonably and with deliberate indifference and disregard for the safety of Mr. Tumblin, as described above.


**COUNT 7 – State Claim of Negligent and/or Intentional Conduct Resulting in Injury and Death— Defendants J. Does #1-99 (Individual Capacities)**

72.

Plaintiff repeats and re-alleges each and every allegation of the complaint.


73.

The above-named Defendants, acting individually and together, and under color of law, engaged in a course of conduct, and conspired to engage in a course of conduct, that caused injury

and harm to Mr. Tumblin and ultimately led to his death.  At all times pertinent herein, these Defendants, individually and collectively, acted intentionally, maliciously, recklessly, and/or negligently towards the deceased, Mr. Tumblin.  Furthermore, these Defendants, individually and collectively, had the duty and ability to intervene to prevent the tortious conduct of co-Defendants toward Mr. Tumblin, as described herein, but failed to do so.  They are therefore liable to Plaintiff, as described herein.

### COUNT 8 – State Claim of Respondeat Superior Liability of Sheriff Gusman

74.

Plaintiff repeats and re-alleges each and every allegation of the complaint.

75.

At all relevant times, the individually named Defendants were acting in the course and scope of their employment with Defendant Gusman and the OPSO.  Defendant Gusman is therefore liable under the doctrine of *respondeat superior* for the actions and inactions of the individual Defendants, as described herein.

### COUNT 9 – Loss of Consortium ALL DEFENDANTS

76.

Plaintiff repeats and re-alleges each and every allegation of the complaint.

77.

Defendants are liable to GAYNELL TUMBLIN, pursuant to La. C.C. 2315 (B) through 42 U.S.C. § 1983, for loss of service, society, support, love and affection arising out of the injuries occasioned by the acts and/or omissions of the Defendants herein.

### COUNT 10 – Wrongful Death Claim of GAYNELL TUMBLIN

78.

Plaintiff repeats and re-alleges each and every allegation of the complaint.

21

79.

GAYNELL TUMBLIN, who is one of the surviving siblings of Mr. Tumblin and the administrator of his estate, seeks to recover for the damages which she sustained as a result of the death of her brother due to the fault of Defendants in that she had a very close, loving supportive relationship with her brother.

80.

The deceased left no surviving wife or children.

## COUNT 11 – Survival Action Claim of GAYNELL TUMBLIN

81.

Plaintiff repeats and re-alleges each and every allegation of the complaint.

82.

Plaintiff seeks relief under La. C.C. art 2315.2, for the pain and suffering occurring before and during Mr. Tumblin's death occasioned by the intentional and/or grossly negligent acts and/or omissions of the Defendants herein, and for all other relief as set forth herein.

## COUNT 12 – State Claim for Breach of Duty to Provide Medical Treatment (Gusman)

83.

Plaintiff repeats and re-alleges each and every allegation of the complaint.

84.

Under Louisiana law, Defendant Gusman, as Sheriff and the confining authority, has a legal duty to provide medical treatment for prisoners.

85.

Gusman failed to provide medical and mental health treatment within the OJC that was adequate and reasonable as required by law.

86.

Mr. Tumblin's death was a direct result of Gusman's failure to provide adequate and reasonable medical and mental health care.

## COUNT 13 – State Claim for Violation of the Louisiana Public Records Act (Gusman)

87.

Plaintiff repeats and re-alleges each and every allegation of the complaint.

88.

Under Louisiana law, Defendant Gusman is the custodian of records related to the detention of prisoners at OJC and is required to provide the public access to copy and inspect all public, non-exempt documents.

89.

Gusman failed to provide access to public documents related to the detention of Mr. Tumblin as required by law.

## VI.    INJURIES

As a result of the actions of the Defendants as described above, damages have been incurred as follows:

a.    Mr. Tumblin (deceased) suffered conscious and severe physical, mental, and emotional distress, pain and suffering prior to his death, and lost his life.

b.    Gaynell Tumblin, who is the sister Mr. Tumblin, suffered emotional pain and suffering, past, present, and future; loss of support; and have suffered the loss of love, affection, and companionship of her brother, Mr. Tumblin, and has incurred funeral and burial expenses.

## VII.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that after due proceedings there be judgment rendered herein in Plaintiff's favor and against all Defendants individually and jointly, as follows:

1.     Compensatory and punitive damages as prayed for herein;

2.     Reasonable attorneys' fees, as provided in 42 U.S.C. § 1988, 42 U.S.C. § 12205, and 29 U.S.C. § 794(b) and all costs of these proceedings and legal interest;

3.     Punitive damages pursuant to 42 U.S.C. § 1983 and any other applicable statute;

4.     Relief under La. C.C. arts. 2315 and 2321 from the intentional and/or negligent acts and/or omissions of the Defendants herein;

5.     An Order directing Defendant Gusman to disclose the records requested and for an award of attorney's fees, damages, and costs as provided by La. R.S. 44:1 *et seq*; and

6.     All other relief as appears just and proper to this Honorable Court.

{Signatures appear on following page.}

RESPECTFULLY SUBMITTED, this 22nd day of February, 2017.

THE CLAIBORNE FIRM, P.C.

/s/ David J. Utter
DAVID J. UTTER
Louisiana Bar Number: 23236
*Lead Attorney for Plaintiff*

410 East Bay Street
Savannah, Georgia 31401
(912) 236-9559 Telephone
(912) 236-1884 Facsimile
david@clairbornefirm.com

/s/ William R. Claiborne
WILLIAM R. CLAIBORNE
Georgia Bar Number: 126363
*Pro Hac Vice Motion Forthcoming*
*Attorney for Plaintiff*

410 East Bay Street
Savannah, Georgia 31401
(912) 236-9559 Telephone
(912) 236-1884 Facsimile
will@clairbornefirm.com

/s/ John Adcock
JOHN ADCOCK
Louisiana Bar No. 30372
*Attorney for Plaintiff*

P.O. Box 750621
New Orleans, LA 70175
T:  (504) 233-3125
F:  (504) 308-1266
Email:  jnadcock@gmail.com